# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| CONSOLIDATED GOLDEN QUAIL RESOURCES, LTD.; BEVERLY WIGGLESWORTH; and JAMES WAYNE COLE, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF INTERIOR, and BUREAU OF LAND MANAGEMENT, <br><br> Defendants. | 2:11-cv-01853-PMP-RJJ <br><br> **ORDER** |

Presently before the Court is Plaintiffs Consolidated Golden Quail Resources, Ltd., Beverly Wigglesworth, and James Wayne Cole's Complaint (Doc. #1), filed November 17, 2011, which seeks judicial review of an agency decision. Defendants United States of America, United States Department of Interior, and Bureau of Land Management filed an Answer (Doc. #13) on January 20, 2012. Plaintiffs filed a Brief in Support of Complaint to Reverse Prior Decision of the Interior Board of Land Appeals (Doc. #19) on April 17, 2012. Defendants filed a Responsive Brief (Doc. #20) on June 18, 2012. Plaintiffs filed a Reply Brief (Doc. #21) on June 27, 2012. For the reasons set forth below, the Court affirms the July 19, 2010, decision of the Interior Board of Land Appeals.

## I. BACKGROUND

The California Desert Protection Act ("CDPA") was enacted in 1994 and created the Mojave National Preserve. 16 U.S.C. §§ 410aaa-41–410aaa-59. All federal lands

within the preserve were withdrawn from entry, appropriation, or disposal under the public land mining laws, subject to valid mining rights existing at the time the CDPA was enacted. Id. §§ 410aaa-42, 410aaa-47.  Furthermore, any plan of operation on existing mining rights subject to the CDPA could not be approved until the Secretary of the Interior determined the mining claim's validity.  Id. § 410aaa-49.

Plaintiffs were the holders of unpatented mining claims on federally-owned land in San Bernardino County, California.  (AR 8, 51, 588, 605.)  The claims at issue here were located in 1988 and originally part of a group that included 143 claims, but after Congress enacted the CDPA, all but 42 of the claims were abandoned.  (AR 8 n.1, 51, 588.)  Plaintiff Beverly Wigglesworth obtained an interest in the claims at issue on November 7, 1995. (AR 312-15.)  Plaintiff James Wayne Cole deeded his interests in the claims to Plaintiff Consolidated Golden Quail Resources, Ltd., in May of 2008, although his potential lack of interest in the claims has no bearing on this matter.  (AR 8, 186.)

On August 10, 2001, the Bureau of Land Management ("BLM") contested the validity of 16 of the 42 claims left in the group.  (AR 675-78.)  BLM's contest was based on a failure to find minerals "in sufficient quantities or of sufficient qualities to constitute a discovery of a valuable mineral deposit."  (AR 676.)  Plaintiffs denied BLM's allegation and asserted the validity of all 16 mining claims.  (AR 672.)  After two rounds of hearings, the administrative law judge ("ALJ") found the parties disputed the validity of only three of the 16 claims: Golden Quail, Golden Quail No. 2, and Golden Quail No. 6 ("core claims"). (AR 605-06.)  On April 23, 2008, the ALJ issued a decision finding the three core claims valid and the other 13 claims invalid.  (AR 633.)

BLM appealed the ALJ's decision regarding the three core claims to the Interior Board of Land Appeals ("IBLA").  (AR 602.)  Plaintiffs cross-appealed the ALJ's decision regarding the other 13 claims, which the IBLA dismissed after Plaintiffs abandoned their cross-appeal.  (AR 588, 600.)  The IBLA remanded the case back to the ALJ to more fully

support his validity findings on the three core claims. (AR 588, 596-97); see also Beverly Wigglesworth, 178 I.B.L.A. 51 (2009).

Before the ALJ conducted a supplemental hearing on remand, BLM issued a decision declaring the three core claims "forfeited and void by operation of law" based on Plaintiffs' failure to pay the annual maintenance fees for the 2010 assessment year on or before September 1, 2009. (AR 164-66.) The holder of a mining claim must pay an annual maintenance fee on or before September 1 of each year to maintain the mining claim for the upcoming assessment year or the claim is forfeited by operation of law. 30 U.S.C. §§ 28f, 28i; 43 C.F.R. §§ 3830.91, 3834.11.

Maintenance payments on 42 of Plaintiffs' mining claims, including the three core claims, were paid by Benson Minerals or Windham Resources, who appear to be affiliates or representatives of Plaintiff James Wayne Cole, from the 2002 assessment year through the 2008 assessment year. (AR 240-47, 256-62, 273-307.) Additionally, Larry Schaffer ("Schaffer"), who appears to be President of Plaintiff Consolidated Golden Quail Resources, Ltd., made a duplicate maintenance fee payment for 2007 and 2008 on the 16 claims originally contested by BLM, which BLM refunded to Schaffer. (AR 10, 248-51, 263-64.) For the 2009 assessment year, Schaffer paid the maintenance fee on only the three core claims. (AR 179-80.) Benson Minerals thereafter made a duplicate payment on the three core claims for the 2009 assessment year, which BLM refunded to Benson Minerals. (AR 176-78.) No one paid on the remaining 39 claims for the 2009 assessment year, and therefore as of September 1, 2008, all but the three core claims were abandoned.[1] (AR 172-75.)

---

[1] BLM's forfeiture decision on March 13, 2008 lists only 14 of Plaintiffs' mining claims as forfeited. (AR 175.) However, there is no record evidence showing the annual maintenance fees for 2009 were paid on any claims besides the three core claims, and the parties do not argue the 26 claims were valid after that date.

3

On September 9, 2009, Schaffer mailed in the 2010 maintenance fees on the three core claims. (AR 167-71.) BLM rejected and refunded Schaffer's attempt to pay the maintenance fees for 2010 because the paperwork was postmarked after the September 1 deadline. (AR 167-71.) BLM based its forfeiture decision for the three core claims on Plaintiffs' failure to pay the maintenance fees for the 2010 assessment year. (AR 164.)

Plaintiffs appealed BLM's forfeiture decision to the IBLA, and the IBLA affirmed. (AR 20, 156); see also Consolidated Golden Quail Resources, Ltd., 179 I.B.L.A. 309 (2010). The IBLA rejected Plaintiffs' first argument that BLM should have applied Plaintiffs' overpayments to the 2010 maintenance fees for the three core claims. (AR 11-12.) The IBLA found Plaintiffs did not request BLM to credit the overpayments towards the three core claims, so BLM lacked authorization to credit the overpayments to the core claims. (Id.) The IBLA also noted that when BLM received overpayments it refunded them, without objection from Plaintiffs. (AR 11, 13-15.) The IBLA additionally found BLM did not have an obligation to inquire as to Plaintiffs' intentions regarding the overpayments before a refund, as there is no regulatory basis for this obligation and it would impose an unreasonable burden on BLM. (AR 12.) Finally, the IBLA found BLM did not "erratically" manage the claims as Plaintiffs argued, but reasonably applied the payments it received to Plaintiffs' valid mining claims, and refunded any duplicate payments on those same mining claims. (AR 12, 15.)

The IBLA also rejected Plaintiffs' second argument that Schaffer timely mailed the 2010 maintenance fees for the three core claims but BLM lost the payments. (AR 16.) The IBLA found Plaintiffs' evidence insufficient to show BLM timely received the payment because BLM had no record of receiving it before the due date, and Plaintiffs offered only a copy of a letter dated before September 1, 2009 and Schaffer's statement that he mailed the letter before the deadline. (AR 16.) The IBLA relied on its long recognized presumption that government officials have discharged their duties properly and therefore

4

an absence of a document in the government's record generally indicates the document was not received. (AR 15.) The IBLA also rejected Plaintiffs' argument that an evidentiary hearing would confirm BLM's allegedly faulty mailroom procedures because BLM employees' declarations showed the mailroom policies had not changed and the letter had not been found after a careful search. (AR 17.)

Finally, the IBLA refused to create an equitable remedy to prevent forfeiture of the three core claims, finding it was without authority to waive the forfeiture statute and grant equitable relief because the claims were forfeited as a matter of law. (AR 18-19.) Furthermore, the IBLA denied Plaintiffs' request to re-open the lands and allow Plaintiffs to relocate their claims because the CDPA withdrew the lands from appropriation of new claims, and the IBLA had no legal basis to lift the withdrawal. (AR 19.)

Plaintiffs now seek judicial review of the IBLA's decision under the Administrative Procedure Act ("APA"). Plaintiffs do not contest that the untimely payment of an annual maintenance fee for a mining claim results in automatic forfeiture, or that Schaffer's payment postmarked September 9, 2009, was not timely. Instead, Plaintiffs argue BLM retained thousands of dollars in overpayments made on Plaintiffs' abandoned claims and should have credited those overpayments towards the 2010 annual maintenance fees for the three core claims. Plaintiffs contend that as of September 1, 2006, BLM knew Plaintiffs had abandoned 26 of their mining claims. Therefore, any payments made after that time on more than the 16 claims at issue in the original proceeding before the ALJ were overpayments BLM still retains.[2] In the alternative, Plaintiffs argue BLM should be

---

[2] Plaintiffs did not argue before the IBLA that BLM should have applied the payments on the 26 allegedly abandoned claims towards the 2010 fees for the three core claims. However, Plaintiffs generally argued that BLM should have applied Plaintiffs' overpayments to prevent forfeiture of the three core claims, and that the 26 claims had been abandoned by 2006. (AR 102, 104.) The IBLA made a finding on whether BLM should have credited overpayments and whether the claims were abandoned. (AR 12, 14.) Defendants do not argue Plaintiffs waived this argument. Therefore the Court will address Plaintiffs' argument regarding overpayments on the 26 allegedly abandoned claims.

estopped from forfeiting the three core claims because BLM knew Plaintiffs overpaid and BLM wrongfully applied the overpayments to invalid claims without Plaintiffs' knowledge instead of refunding or crediting the overpayments towards Plaintiffs' three core claims for the 2010 assessment year.

Defendants maintain Plaintiffs did not pay the 2010 annual maintenance fees on the three core claims before September 1, 2009, and therefore, under the applicable statute and regulations, the claims were automatically forfeited by operation of law. Defendants argue BLM did not retain any overpayments on Plaintiffs' mining claims because the yearly maintenance payments for 2007 and 2008 were made on 42 still valid mining claims, and BLM refunded any duplicate payments made on these claims. Defendants contend that even if there were overpayments, it was Plaintiffs' obligation to request BLM credit the overpayments to the three core claims, which Plaintiffs did not do. Defendants also argue estoppel is not applicable here because the forfeiture was statutorily mandated and estoppel cannot be applied to defeat the statutory consequences of failing to timely pay the yearly fees. Defendants further argue that even if estoppel could apply, Plaintiffs cannot show BLM engaged in affirmative misconduct, therefore BLM should not be estopped from enforcing the forfeiture statute and its regulations.

**II. DISCUSSION**

**A. APA Review of the IBLA's Decision**

Plaintiffs bring a claim for judicial review of the IBLA's decision under the APA. 5 U.S.C. §§ 701-706. This Court's review under the APA is limited, and the Court will set aside the IBLA's decision only if it is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2); see also Hjelvik v. Babbitt, 198 F.3d 1072,

1074 (9th Cir. 1999).  Under this standard of review, the Court must "carefully search the entire record to determine whether it contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and whether it demonstrates that the decision was based on a consideration of the relevant factors."  Id. (internal quotation marks and citations omitted); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).  The Court additionally "must determine whether the agency articulated a rational connection between the facts and the choice made."  Geo-Energy Partners-1983 Ltd. v. Salazar, 613 F.3d 946, 955 (9th Cir. 2010).  However, "the ultimate standard of review is a narrow one" and this Court cannot "substitute its judgment for that of the agency."  Citizens to Preserve Overton Park, 401 U.S. at 416.

    Plaintiffs argue the IBLA's decision was not supported by substantial evidence, was in excess of statutory authority or short of statutory right, and was not in accordance with existing law.  First, Plaintiffs argue that the IBLA's decision is not supported by substantial evidence because BLM retained funds that would cover the 2010 maintenance fees for the three core claims.  Plaintiffs argue BLM contested the validity of all 42 of Plaintiffs' mining claims and by 2006 Plaintiffs were defending only 16 of their claims, therefore the other 26 claims were abandoned by the time the payments for 2007 and 2008 were made.  Plaintiffs thus argue the payments for 2007 and 2008 on the 26 abandoned claims were overpayments totaling $6,500, which BLM retained and should have applied to the 2010 maintenance fees for the three core claims.

    The IBLA found BLM applied all of Plaintiffs' payments towards valid mining claims and properly refunded any duplicate payments, and therefore BLM retained no overpayments on Plaintiffs' claims.  (AR 13-15.)  The IBLA based this finding on the lack of evidence showing the status of Plaintiffs' 26 allegedly abandoned mining claims changed before September 1, 2008, when Plaintiffs failed to pay the annual maintenance fees and

7

BLM accordingly declared those 26 claims forfeited.  (AR 14-15, 188-96.)

The IBLA's conclusion is supported by substantial evidence.  The record shows BLM contested only 16 of Plaintiffs' claims; the other 26 claims were never at issue.  (AR 672-78.)  Additionally, Plaintiffs' representative continued to pay the annual maintenance fees on the other 26 claims through the 2008 assessment year, and specifically listed the 26 claims allegedly abandoned as the claims to which BLM should apply the payments.  (AR 240-49, 256-62.)  Therefore, the IBLA's finding that BLM retained no overpayments because it properly applied the payments for 2007 and 2008 to Plaintiffs' 26 mining claims not challenged by BLM is supported by substantial record evidence.

Plaintiffs' remaining arguments fail because they rely on BLM retaining overpayments on Plaintiffs' claims, and the IBLA's decision to the contrary is based on substantial evidence.  Moreover, even if there were overpayments, Plaintiffs do not show the IBLA acted in excess of statutory authority, short of statutory right, or not in accordance with existing law.

First, Plaintiffs argue that because BLM retained overpayments on their claims, it should have credited the overpayments towards the three core claims because nothing prohibited BLM from doing so and the law disfavors forfeiture.  The IBLA found that even if BLM retained overpayments on Plaintiffs' claims, Plaintiffs did not request BLM to apply any overpayments to the three core claims, and therefore BLM had no obligation to credit any alleged overpayments to the three core claims for the 2010 assessment year, pursuant to 43 C.F.R. § 3830.22(c).  (AR 11-12.)  Section 3830.22(c) provides that "BLM will apply maintenance and location fee overpayments to future years if you so request." Although § 3830.22(c) does not expressly prohibit BLM from unilaterally crediting overpayments to future maintenance fees, the IBLA interpreted § 3830.22(c) to mean BLM did not have an affirmative obligation to credit the 2010 maintenance fees for the three core claims in the absence of a request from Plaintiffs.  (AR 12.)

1    The IBLA's interpretation must be "given controlling weight unless it is plainly
2 erroneous or inconsistent with the regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S.
3 504, 512 (1994) (quotation omitted); see also Norfolk Energy, Inc. v. Hodel, 898 F.2d 1435,
4 1441-42 (9th Cir. 1990) ("We defer to the IBLA's interpretation of the regulations unless it
5 is plainly erroneous or inconsistent with the regulations."). The IBLA's interpretation of
6 § 3830.22(c) is not plainly erroneous or inconsistent, as the regulation's plain language
7 provides that BLM will apply overpayments at the mining claim holder's request. Also,
8 whether BLM was required to refund the overpayments under § 3830.22 is irrelevant
9 because even if BLM improperly retained overpayments, it did not have an obligation under
10 the regulation to credit the three core claims in the absence of Plaintiffs' request.

11   Relatedly, Plaintiffs assert that asking BLM to credit the payments made on the
12 26 allegedly abandoned claims towards the three core claims would have been a "futile
13 gesture" because BLM already had applied the funds to the 26 claims. However, Plaintiffs
14 cite no authority to show BLM would have been prohibited from refunding or crediting the
15 payments towards the claims Plaintiffs wished to preserve if Plaintiffs had so requested.

16   Finally, Plaintiffs generally argue for an equitable or legal remedy to prevent
17 forfeiture of the three core claims. Plaintiffs contend the current law does not address the
18 situation where BLM improperly applied payments to abandoned mining claims and then
19 declared other valid claims forfeited for failure to pay the maintenance fees. However, the
20 IBLA found this was not the factual scenario present in this matter, and the IBLA's decision
21 is supported by substantial evidence. Consequently, the IBLA's refusal to create an
22 equitable remedy under these circumstances does not exceed statutory authority, is not short
23 of statutory right, and is not contrary to existing law. Therefore, this Court will affirm the
24 IBLA's decision affirming BLM's forfeiture of the three core claims.

25   **B. Equitable Estoppel**
26   Plaintiffs did not argue before the IBLA that BLM should be equitably estopped.

Plaintiffs' estoppel theory is therefore arguably waived. See Lara v. Sec'y of Interior of U.S., 820 F.2d 1535, 1540 (9th Cir. 1987) (finding the failure to raise an argument to the IBLA precludes the reviewing court from considering it).  However, Defendants do not assert Plaintiffs waived the issue, and in any event, Plaintiffs cannot show the BLM should be estopped.

"[W]here justice and fair play require it, estoppel will be applied against the government, even when the government acts in its sovereign capacity if the effects of estoppel do not unduly damage the public interest."[3] Johnson v. Williford, 682 F.2d 868, 871 (9th Cir. 1982) (internal quotation marks and citation omitted).  The party asserting estoppel against the government must show some affirmative misconduct by the government, such as an affirmative misrepresentation or concealment of a material fact. United States v. Ruby Co., 588 F.2d 697, 703-04 (9th Cir. 1978).  "There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances."  Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir. 1989) (citing Lavin v. Marsh, 644 F.2d 1378, 1382-83 n.6 (9th Cir. 1981)).  The party seeking to estop the government also must show the traditional elements of estoppel: "(1) knowledge of the true facts by the party to be estopped; (2) intent to induce reliance or actions giving rise to a belief in that intent; (3) ignorance of the true facts by the relying party; and (4) detrimental reliance."  Bolt v. United States, 944 F.2d 603, 609 (9th Cir. 1991).

Plaintiffs' estoppel argument relies on the same premise as its arguments for review under the APA, and therefore fails for the same reason.  Plaintiffs argue BLM

---

[3] Defendants argue the United States Supreme Court has not resolved if and under what circumstances the government may be estopped.  But the Supreme Court has not foreclosed the possibility of estopping the government, and the United States Court of Appeals for the Ninth Circuit has determined the government may be estopped under certain circumstances.  Johnson, 682 F.2d at 871.

1  erroneously applied the payments on the 26 claims but continued to assert the payments
2  were properly applied.  Plaintiffs contend this conduct constitutes active concealment of the
3  relevant facts amounting to affirmative misconduct.  However, the IBLA found BLM
4  applied the payments towards Plaintiffs' valid claims and the record supports that finding.
5  BLM therefore did not conceal overpayments and Plaintiffs have not met their burden of
6  showing BLM committed affirmative misconduct.  Even if BLM had overpayments on
7  Plaintiffs' claims, BLM's failure to credit the payments towards the 2010 maintenance fees
8  for the three core claims in the absence of a request by Plaintiffs to do so was not
9  affirmative misconduct.  See Lavin, 644 F.2d at 1384 ("A mere failure to inform or assist
10 does not justify application of equitable estoppel."); 43 C.F.R. § 3830.22(c) ("BLM will
11 apply maintenance and location fee overpayments to future years if you so request.").
12 Compare with United States v. Wharton, 514 F.2d 406, 407-08, 412 (9th Cir. 1975) (finding
13 affirmative misconduct when BLM gave erroneous advice and made misrepresentations to
14 the party claiming an interest in federal lands).
15         Plaintiffs also cannot show the traditional elements of estoppel because each
16 element again relies on the premise that BLM retained overpayments on Plaintiffs' claims.
17 BLM had no overpayments on the 26 claims, and, consequently, there is no evidence BLM
18 intended Plaintiffs to rely to their detriment on its alleged concealment of overpayments.
19 Plaintiffs also argue they were unaware any payments were made on the 26 claims for 2007
20 and 2008, so Plaintiffs did not detrimentally rely on the purported overpayments to cover
21 the 2010 maintenance fees for the three core claims.  Consequently, Plaintiffs have not
22 shown BLM should be estopped from declaring the three core claims forfeited and void
23 under 30 U.S.C. § 28i.
24         **C. Summary**
25         The IBLA's decision was based on substantial evidence and not contrary to law.
26 Plaintiffs failed to pay the 2010 maintenance fees on the three core claims before September

1, 2009, and therefore their core claims were forfeited by operation of law. 30 U.S.C. §§ 28f, 28i; 43 C.F.R. §§ 3830.91, 3834.11; see also United States v. Locke, 471 U.S. 84, 100-02 (1985) (finding mining claims must be forfeited when the statutorily required annual filing, which can now be substituted by paying the annual maintenance fee, was one day late). The Court therefore affirms the IBLA's decision. Additionally, Plaintiffs have not shown BLM should be estopped from forfeiting the three core claims. The Court therefore will enter Judgment in favor of Defendants and against Plaintiffs on Plaintiffs' Complaint (Doc. #1).

## III. CONCLUSION

IT IS THEREFORE ORDERED that the IBLA's decision is hereby AFFIRMED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants United States of America, United States Department of Interior, and Bureau of Land Management, and against Plaintiffs Consolidated Golden Quail Resources, Ltd., Beverly Wigglesworth, and James Wayne Cole.

DATED: October 8, 2012

_____
PHILIP M. PRO
United States District Judge